# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

|  |  |
|---|---|
| In re: | ) |
|  | ) |
| PALADIN CAPITAL, INC., ET AL., | ) **Case No. 3:26-bk-00316** |
|  | ) **Judge Walker** |
| Debtors. | ) **Jointly Administered** |
|  | ) |

**MOTION OF THE CHAPTER 7 TRUSTEE PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE FOR SUBSTANTIVE CONSOLIDATION OF THE DEBTORS**

Comes now Jeanne Ann Burton, Chapter 7 Trustee for the estate of Paladin Capital, Inc. ("Paladin") and its wholly-owned subsidiaries, Quickway Logistics, Inc. (Case No. 26-00317), Quickway Carriers, Inc. (Case No. 26-00318), Quickway Services, Inc. (Case No. 26-00319), Quickway Transportation, Inc. (Case No. 26-00320), CCL Permitting, LLC (Case No. 26-00321), Capital City Leasing, Inc. (Case No. 26-00322), Freight Contracting Services, LLC (Case No. 26-00323), Volunteer Express, Inc. (Case No. 26-00324), Robert Bearden, Inc. (Case No. 26-00325), Dolphin Line, Inc. (Case No. 26-00326), K&L, LLC (Case No. 26-00327), RC Trailer Sales & Service Company, Inc. (Case No. 26-00328), RC Enterprises, LLC (Case No. 26-00329), SNL Distributing Services Corp. (Case No. 26-00330), Central Logistics, Inc. (Case No. 26-00331), L Street Ventures, Inc. (Case No. 26-00332), Magnum Express, Inc. (Case No. 26-00333), Magnum Logistics, Inc. (Case No. 26-00334), Magnum Warehouse Services, LLC (Case No. 26-00335), SG Express, Inc. (Case No. 26-00336), Wildhorse Fleet Services, LLC (Case No. 26-00337), Sutherland National Insurance Company, LLC (Case No. 26-00338), QW Leasing (Case No. 26-00339), and Nacarato Truck Leasing (Case No. 26-00340), Chapter 7 debtors herein (collectively the "Debtors"), and respectfully represents:

### Background

1. On January 26, 2026 (the "Commencement Date"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On February 18, 2026, each of the Debtor's cases converted to cases under Chapter 7 and the Trustee was appointed to administer the bankruptcy estates.

2. Pursuant to order of the Court, the Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Fed. R. Bankr. P. 1015(b).

### The Debtors' Business

3. Paladin is the ultimate parent company of all of the affiliated Debtors in this action.

4. Paladin is owned by the Debtors' current and former employees through an employee stock ownership program ("ESOP"). Thus, Paladin and all of the affiliated Debtors are ultimately owned by the same ownership, comprised of the employees of all of the Debtors.

5. The Debtors were all in the trucking and logistics business. Their customers included major grocery store chains, home improvement chains, and numerous types of other businesses.

6. All of the Debtors' corporate management was handled by a single executive team located in Brentwood, Tennessee. That executive team included, among others, Chief Executive Officer Brian Hall and Vice President of Finance Gayle Culpepper. The executive team in Brentwood tracked all of the Debtors' equipment, sent all invoices on behalf of the Debtors, and paid almost all accounts payable from a single account for all Debtors.

7. The Debtors' operations grew slowly over time. Over a number of years, as owners of a trucking business wished to retire or sell, Paladin would enter into a transaction in which the target business would be acquired (typically via debt) and the employees of that business would become owners, through the ESOP, of the consolidated Paladin enterprise.

8. The Debtors have the same four major creditors.

9. The first of Debtors' creditors is Truist, which controlled all of the Debtors' cash and lent to all Debtors against accounts receivable and equipment owned by any of the Debtors.

10. All of the Debtors' cash was, pre-petition, subject to Truist's control via a sweep arrangement. Truist lent under a line of credit arrangement in which cash was swept out of all of the Debtors' bank accounts daily to Truist. Truist would then decide what to lend back to Debtors under the line of credit. Upon information and belief, Truist did not, in its lending practices or sweeping practices, differentiate among Debtors; all funds were swept in satisfaction of a single loan obligation and the funds loaned back by Truist were used by any or all of the Debtors.

11. As of the Petition Date, Truist was owed approximately $14.64 million. As evidenced by pleadings filed in this case to date, Truist claims to be secured by substantially all assets of all Debtors, including accounts receivable and equipment.

12. The other three major creditors of the Debtors are equipment lessors: First Horizon Bank, Bank of America, and Bank of Montreal. In total, these three equipment lenders were owed approximately $60 million by the Debtors. The three lessors leased equipment to multiple debtors under the same lease.

13. In addition to Truist and the three major lessors, the Debtors also have other mutual obligations, including trade creditors and smaller equipment lenders.

14. The Debtors attempted to reconcile cash flow amongst themselves via intercompany loan and receivables noted on the books. As such, certain of the Debtors are creditors of other Debtors. However, upon information and belief, none of the Debtors would be capable of satisfying these intercompany debts. Moreover, the Trustee does not believe that these

Case 3:26-bk-00316    Doc 301    Filed 06/25/26    Entered 06/25/26 15:19:41    Desc Main
Document    Page 3 of 13

intercompany transactions properly reflect a pro rata division of all receivables and expenditures, as some would be virtually impossible to divide pro rata among the Debtors.

15. Importantly, the Debtors filed a consolidated tax return, through Paladin, with the federal government. Some of the Debtors filed individual state returns where the subsidiary was required to do so by state law.

## **Jurisdiction**

16. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## **Relief Requested**

17. Pursuant to section 105 of the Bankruptcy Code, by this Motion, the Trustee is seeking substantive consolidation of the Debtors' cases. Specifically, the Trustee requests that all the Debtors and their estates be deemed merged and:

  a. all intercompany claims between or among any of the Debtors be deemed canceled and no distribution be made on account thereof;

  b. all assets and liabilities of the Debtors be deemed merged;

  c. all guaranties of any Debtor of the payment, performance, or collection of obligations of any other Debtor be eliminated and canceled;

  d. any obligation of any Debtor and all guaranties thereof executed by one or more of the other Debtors be treated as a single obligation and such guaranties be deemed a single claim against Paladin;

4

e. all joint obligations of two or more Debtors or of one or more Debtor and one or more affiliate, and all multiple claims against such entities on account of such joint obligations, be considered a single claim against Paladin; and

f. each claim filed in the case of any Debtor be deemed filed against Paladin and a single obligation of the consolidated Debtors.

**Substantive Consolidation of the
Debtors is Warranted Under the Instant Facts**

18.     Every circuit court to consider the issue has recognized that section 105(a) of the Bankruptcy Code empowers a bankruptcy court to authorize substantive consolidation. *See*, e.g., *Union Sav. Bank. v. Augie/Restivo Baking Co., (In re Augie/Restivo Baking Co.)*, 860 F.2d 515, 518 (2d Cir. 1988); *FDIC v. Colonial Realty Co.*, 966 F.2d 57, 59 (2d Cir. 1992*)*; *Reider v. F.D.I.C. (In re Reider)*, 31 F.3d 1102, 1107 (11th Cir. 1994); *Woburn Assoc. v. Kahn (In re Hemingway Transport Inc.)*, 954 F.2d 1, 12 (1st Cir. 1992); *First Nat'l Bank of El Dorado v. Giller (In re Giller)*, 962 F.2d 796, 798-99 (8th Cir. 1992.

19.     There is no single test used in the Sixth Circuit to determine whether debtor's cases should be substantively consolidated but all of the tests employed are relatively similar. Traditionally, the various courts to consider the issue have identified the following factors as pertinent to the issue of substantive consolidation:

- the presence of consolidated financial statements;

- the presence of common officers and directors; the parent shifting people on or off the subsidiary's board of directors;

- directors or officers not acting independently in the interest of the subsidiary but taking orders from the parent's management or its board;

- the subsidiary having no business except that with its parent or affiliates, or having no assets except those conveyed to it by the parent or an affiliate;

5

- the sharing of overhead, management, accounting and other related expenses among the parent and the subsidiaries;

- the parent paying expenses, salaries or rents of the subsidiaries;

- failure to maintain individual book entries for income receivables and payables for each entity;

- receipts of all entities deposited in, and disbursements withdrawn from, one operating account without maintaining appropriate accounting entries to record deposits and withdrawals of each entity;

- the degree of difficulty in segregating and ascertaining individual ownership of assets and obligations of its subsidiaries;

- the occurrence of transfers of assets or funds without regard to separateness of entities;

- the commingling of assets and operations;

- the parent, its affiliates, and the subsidiaries acting from the same business location;

- the failure to observe formal legal requirements of subsidiaries as separate and independent corporations;

- the subscription by the parent to all capital stock of the subsidiary and the ownership by the parent of all capital stock of the subsidiary;

- the grossly inadequate capital of the subsidiary; and

- the parent referring to its subsidiary as a department or division.

*See Fishell v. United States Trustee (In re Fishell)*, 1997 U.S. App. LEXIS 8394, \*8 (6th Cir. 1997) ("Thus, when substantive consolidation is ordered, there is, in effect, a determination that the circumstances of the cases warrant consolidation and that the best interests of the unsecured creditors are served by joining the assets and liabilities of two or more debtors."); *Eastgroup Properties v. Southern Motel Ass'n Ltd.*, 935 F.2d 245, 249-50 (11th Cir. 1991); *Soviero v. Franklin National Bank*, 328 F.2d 446, 447-48 (2d Cir. 1964); *Stone v. Eacho*, 127 F.2d 284, 286-89 (4th Cir. 1942); *In re Vecco Construction Indus.*, 4 B.R. 407, 410 (Bankr. E.D. Va. 1980); *see also* 2 Richard Levin & Henry J. Sommer, *Collier on Bankruptcy* § 105.09 (16th 2026). A decision in

favor of substantive consolidation, however, need not be supported by the presence of all these factors. *East Group Properties*, 935 F.2d at 250; *In re Gainesville P-H Properties, Inc.*, 106 B.R. 304, 305 (Bankr. M.D. Fla. 1989).

20.      Generally, these factors are examined in the context of a substantive consolidation analysis to determine: (i) whether there is a substantial identity or an inseparable "interrelationship" or "entanglement" between the debtors to be consolidated and (ii) whether the benefits of consolidation outweigh the harm or prejudice to creditors, including whether individual creditors relied upon the separate identity of one of the entities to be consolidated such that they would be prejudiced by consolidation. *Augio/Restivo*, 860 F.2d at 518.  This general reasoning has been adopted by the Bankruptcy Court for Eastern District of Tennessee, in *Paris v. Walker (In re Walker)*, 566 B.R. 503 (Bankr. E.D. Tenn. 2017).  The general test adopted by the *Walker* court requires the movant to show:

> (1) "**substantial identity between the entities** to be consolidated; and (2) **consolidation is necessary to avoid some harm or to realize some benefit**." Upon such a showing, a presumption arises "that creditors have not relied solely on the credit of one of the entities involved."  Once the prima facie showing of substantial identity and harm or benefit is made, the burden shifts to an objecting creditor to show that it has relied on the separate credit of one of the entities to be consolidated and that it will be prejudiced by substantive consolidation.

*Id* at 527 (quoting *In re Eastgroup Properties v. Southern Motel Association*, 935 F.3d 245, 249 (11th Cir. 1991)) (emphasis added).  This test, known as the "Eastgroup Test", requires a showing of pre-petition commingling <u>and</u> the necessity of post-petition consolidation.  Another test, known as the *Owens Corning* test, allows <u>either</u> the showing of commingling <u>or </u>the necessity of consolidation. *See In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005).  The *Owens Corning* disjunctive test has recently been adopted by a Western District of Tennessee court, in *In re Holiday*

*Ham Holdings, LLC*, 2023 Bankr. LEXIS 2775, *9 (W.D. Tenn. 2023).[1]  Regardless of the specific test applied by this Court, the facts of this case strongly support substantive consolidation.

**There is a Substantial Identity, Interrelationship,
Interdependence, and Entanglement Between and Among the Debtors**

21.     As demonstrated below, there is a substantial identity, extensive interrelationship, interdependence, and entanglement between and among the Debtors such that Paladin and its Debtor subsidiaries are inextricably intertwined in virtually all operational and financial aspects. They include, but are not limited to, the following:

- Joint Corporate Structure:

    - All of the Debtors are owned and controlled, directly or indirectly, by the same ESOP.  Employees of all of the Debtors comprise the ESOP.

    - Corporate policy for all the Debtors is established and implemented by Paladin's officers and directors.

    - The Debtors operated under unified management in Brentwood, Tennessee, and without regard to the profitability of any individual entity in the corporate family.

- Joint Business Operations:

    - Although separate books and records are maintained for each of the Debtors, all funds were collected, managed, and paid in a centralized fashion without regard to the profitability of any of the Debtors.

    - The Debtors' assets were tracked and managed centrally.

    - Intercompany accounts were maintained on the books, but upon information and belief, there was never reconciliations made among the Debtors.

    - The Debtors operate under unified management.

---

[1] The facts of *Holiday Ham* closely resemble those of this case.  *Holiday Ham* involved "sweep accounts" like this matter; one company handled all bills and expenses, like this matter; and one entity handled the tax filings, like this matter.

- Joint Administrative Tasks:

  - Paladin is responsible for payment of all costs incurred by and attributable to the execution of the administrative functions that benefit each of the Debtors.

  - All of the Debtors were carried on the same insurance plans, without regard to separate assets or separate risks.

- Consolidated Financial Reports:

  - All of the Debtors' public financial reports are prepared on a consolidated basis and disseminated to, inter alia, suppliers, landlords, lenders, credit rating agencies, and ESOP members.

- Joint Accounting System:

  - The Debtors' accounting system, as well as the formulation and implementation of accounting controls, are effectuated and overseen by Paladin's employees.

  - Paladin's subsidiaries do not maintain their own accounting functions.

- Joint Tax Returns:

  - The Debtors file consolidated federal tax returns.

- Consolidated Cash Management:

  - The Debtors utilize a centralized cash management system. While some of the Debtors had separate accounts, funds were swept by Truist daily from each of the Debtors' accounts in satisfaction of a single debt to Truist. Truist would then loan additional funds to Paladin for use by all of the Debtors. Expenses for all of the Debtors were then paid by Paladin, centrally.

- Pledges and Guaranties:

  - All of the Debtors were obligated on the largest debts of the Debtors, and all of their assets was pledged as security to the Truist debt.

22.     Because all financial information disseminated to the public by the Debtors is prepared and presented on a consolidated basis, the Trustee believes, upon her review of information and testimony at the meeting of creditors, that their creditors relied on the financial condition of the Debtors as a consolidated enterprise, and not on the separate identity of any individual Debtor in extending credit.

Case 3:26-bk-00316   Doc 301   Filed 06/25/26   Entered 06/25/26 15:19:41   Desc Main
Document   Page 9 of 13

23. In short, the Debtors have operated under unified management, direction, and control with the goal of a unified profitability for the ESOP, without regard to profitability of any individual entity in the corporate family. The substantive consolidation of the Debtors thus reflects the economic reality of the Debtors' business and operations and is fair and equitable for all creditors.

24. Additionally, the proposed substantive consolidation of the Debtors is necessary to effectuate, among other things, equitable distributions, to avoid the calculation, resolution and classification of inter-Debtor claims and to reduce the administrative burden of attempting to disentangle the Debtors' operations. The Trustee does not know how it would be possible to properly divide some expenses and assets pro rata. For example, the Trustee expects to receive reimbursements from certain of the Debtors' consolidated insurance policies. When those funds are returned to the Trustee, she does not know how she would apportion those funds. After all, the Debtors did not contribute equally to the payment of the insurance, nor did the Debtors equally benefit from insurance proceeds distributed on account of the policy. Thus, it is impossible to "unscramble the egg" when it comes to certain joint liabilities and joint assets.

25. Even if the Trustee could develop a system to account for these differences among Debtors, the administrative expense for doing so would be crippling to this estate. The Trustee's professionals have estimated that fees for this type of forensic accounting would likely approach $500,000.

## Substantive Consolidation of the Debtors is Equitable for all Creditors

26. The second prong of the test for determining whether substantive consolidation of the Debtors is warranted is whether the benefits of consolidation will outweigh the potential prejudice to the Debtors' creditors. As shown above, the Debtors' affairs are integrated, interrelated, and entangled from both a functional and a financial perspective. The substantive

consolidation of the Debtors would, therefore, be equitable for all creditors, as it will ensure that all of the Debtors' creditors, including the Debtors' secured lenders, landlords, and trade creditors, having relied on the creditworthiness of the Debtors as a unit, receive the benefit of distribution in satisfaction of their claims from a single pool of assets.

27. Absent substantive consolidation, the Debtors would be required to somehow disentangle their assets and liabilities. The reconciliation and resolution of the inter-Debtor claims that would be required to affect any such disentanglement would be costly and would substantially delay the conclusion of these cases. Moreover, given the level of entanglement among the Debtors, it is not clear that any effort at this juncture to reconstruct and to reconcile the inter-Debtor claims would even be possible. However, even if such an undertaking were possible, its cost and the attendant delay would likely erode any benefit that could possibly result therefrom and ultimately reduce the amount of funds available for distribution to creditors. Thus, the Trustee believes that creditors will not be harmed by substantive consolidation.

28. The only creditors who could even argue that they would be "worse off" by substantive consolidation are those who (a) relied on an individual Debtor's financial condition, apart from the Paladin enterprise, in extending credit, and (b) are creditors of a Debtor that, but for its relationship to Paladin, would be solvent. Because of the size of the joint secured debt, the Trustee does not believe any of the Debtors would be independently solvent. The one Debtor that closest approaches solvency would be Robert Bearden, Inc. ("Bearden"). Bearden seemed to be more profitable than most Debtors, having a positive inter-company accounts receivable balance. Bearden also owns a parcel of unencumbered real property valued by the Debtor at approximately $400,000. However, considering the massive increase in administrative expenses to disentangle the Debtors' affairs (which would likely exceed $400,000) and the amount of Truist debt which

Case 3:26-bk-00316   Doc 301   Filed 06/25/26   Entered 06/25/26 15:19:41   Desc Main
Document    Page 11 of 13

Bearden would be jointly and severally liable for, Bearden's ownership of this real property does not seem to be adequate justification for refusing substantive consolidation.

29. Based upon the foregoing, the Debtors submit that the relief requested herein is appropriate and in the best interests of the Debtors, their estates, and all parties in interest, and should be granted in all respects.

#### **Notice**

30. The Trustee proposes to give notice of this motion to the Office of the United States Trustee, all parties having entered a notice of appearance herein, and all parties on the limited distribution list previously approved by this Court. Moreover, the Trustee proposes to post this document on the website she has established for creditors of this estate. The Trustee submits that no other or further notice need be given.

WHEREFORE the Trustee respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: June 25, 2026.

Respectfully Submitted,

/s/ Justin T. Campbell
Phillip G. Young, Jr.
Justin T. Campbell
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, TN 37203
Tel:    615.465.6000
Fax:    615.807.3048
Email: phillip@thompsonburton.com
        justin@thompsonburton.com

*Counsel for Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the *Motion of the Chapter 7 Trustee Pursuant to Section 105 of the Bankruptcy Code for Substantive Consolidation of the Debtors* has been served upon all parties requesting service via the Court's CM/ECF docket in this case, and all below listed parties via in the Master Service List (as set forth by order of this Court) this 25th day of June, 2026.

/s/ Justin T. Campbell
Justin T. Campbell

Case 3:26-bk-00316   Doc 301   Filed 06/25/26   Entered 06/25/26 15:19:41   Desc Main
Document     Page 13 of 13